Sam Wilson v. The State.

No. 7447.　Decided February 28, 1923.

**1.—Burglary—Circumstantial Evidence—Insufficiency of the Evidence.**

Where, upon trial of burglary, the conviction depended upon circumstantial evidence, and the same fell short of meeting the requirements of the law, before a conviction can be sustained, the judgment must be reversed and the cause remanded. Following Lemon v. State, 89 Texas Crim. Rep., 361.

**2.—Same—Telephone Conversation—Evidence—Hearsay.**

Upon another trial the statement of a certain witness told him over the telephone that defendant was at her house and asleep, should be excluded as hearsay.

**3.—Same—Examination of Witness—Practice in Trial Court.**

Where witness denied that defendant had made any criminative statement to him, the character of examination of the witness by the district attorney should not occur on another trial.

**4.—Same—Evidence—Conversation.**

Upon another trial it will not be necessary to go into all the details of the alleged conversation between the defendant and his father.

Appeal from the District Court of Titus. Tried below before the Honorable R. T. Wilkinson.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*I. N. Williams,* and *B. B. Sturgeon,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is for burglary with punishment of two years in the penitentiary.

On Sunday night, August 28, 1921, a storehouse in the city of Mt. Pleasant was burglarized and a quantity of merchandise stolen. The entry was made through the transom at the back door, and appearances indicated that the exit was over an awning at the front, access to which was easy from a "deck" in the store.

The State relied upon circumstantial evidence, and it is earnestly insisted that it falls short of that required to support a conviction, which makes it necessary to set it out more in detail than is customary.

Chapman was the city marshal. He first heard of the burglary about seven o'clock Monday morning. The night before appellant told him some gambling was in progress at one Duffle's. Chapman could not go just at that time, and later he says appellant told him if he did not go, the game would be over. After this last conversation, which Chapman fixes as between eleven and twelve o'clock, he got another party, Redfearn, and went to Duffle's house. There were no lights burning and no sign of gaming there at that time. It was near twelve o'clock when they got back to town. The next time Chapman saw appellant was about three-thirty at the Cotton Belt Depot. Appellant had before this time given Chapman information about gambling offenses, and had accompanied him at one time to investigate same. After Chapman heard about the burglary, he claims to have called Mrs. Connie Russell's residence. She told him, he says, that appellant was there asleep. He claims to have gotten appellant on the 'phone and requested him to come up town; that he (Chapman) wanted to talk with him. When he saw appellant after that, the latter was with Anderson, a deputy sheriff, in an automobile. Appellant said to Chapman, "Well, they broke in on you last night," and further said, "I think I can find out something about it for you." Witness Cottle testified that either on the night the store was burglarized or the night prior appellant came in the restaurant with a rope in his hand, saying he had been helping or was going to help Redfearn or Polk catch a cow, or something to that effect. Anderson, a State's witness, was deputy sheriff at the time of the burglary. He testified that he heard of the burglary the next morning; that he was going out to attach some witnesses and saw appellant standing in front of a drugstore about nine o'clock and called him to go with witness; that he told appellant about the burglary, who said if he could find out anything about it he would let the officers know. As witness and appellant were returning from their trip they met Sheriff Reeves who talked to appellant but not in Anderson's presence. Reeves told Anderson something after this conversation, but Anderson disclaims arresting appellant. Upon the examination of this witness by the district attorney is based one of appellant's bills of exception. The witness and appellant got back to Mt. Pleasant about three o'clock in the afternoon. Witness, Reeves, and appellant went to Mrs. Russell's, where the officers found two suitcases in the hall, one in a room under the bed, and one in the back yard under a chicken coop. The suitcases and contents were returned to the owners of the burglarized store who identified them as their property. Stevens testified that between ten and eleven o'clock on the night of the burglary he saw appellant sitting on the sidewalk near the burglarized store. Appellant was alone when the witness came up

to where he was. In a few minutes N. C. Rogers came up, when he and appellant walked up the street together. Rogers testified that he and appellant walked up the street a short distance together; that witness then turned across the street; that he did not notice where appellant went, but that there were several boys standing in front of a drugstore on the corner towards which he was going. There was nothing unusual in the fact that appellant was sitting on the sidewalk at the point where Rogers and Stevens saw him. It appears to have been customary for people to sit on the edge of the sidewalk in that part of the town.

The foregoing is a brief but substantial summary of all the State's testimony in opening the case. Appellant proved by one Harris that on the Sunday in question he had been to Omaha to visit a young lady whom he had since married; that he returned to Mt. Pleasant between eight and nine o'clock that night; that he went to the Main Hotel, which was run by Frank Wilkinson; that between ten and eleven o'clock appellant and Edwin Sugs came to the hotel; that witness, appellant, Sugs and Buck Wilkinson (a son of the hotel proprietor) played dominoes in the lobby of the hotel until the train came in about four o'clock in the morning; that some time during the night some one called appellant from the hotel and talked to him on the porch; that witness and the other boys waited for him to come back to go on with the game; that appellant did not leave the hotel, as witness could hear them talking, but did not know what the conversation was about nor who the other party was; that about four o'clock Buck Wilkinson and appellant left saying they were going to the restaurant to get something to eat; that Sugs left, going to his sister's, Mrs. Cokers; that appellant went to bed in Buck's room. Sugs was not a witness. His home appears to have been in Oklahoma, and he was on a visit to Mt. Pleasant at the time of the burglary. Buck Wilkinson, the night clerk of his father's hotel, testified that his duties and the train schedule required him to remain up all night; that appellant had been staying with him for several nights preceding the Sunday night in question, and would sleep during the day. Witness' testimony is substantially the same as that of Harris, except this witness says it was about twelve o'clock when some one called appellant from the hotel that night; he heard them talking on the porch, and heard appellant step off on the walk; that he was gone some thirty or forty minutes when he returned and the domino game was resumed; that between three and four o'clock witness and appellant went to the restaurant to get something to eat; from there witness returned to the hotel, and appellant went towards the depot. Frank Wilkinson, the proprietor of the hotel, testified that when he retired on Sunday night between ten and eleven o'clock appellant was at the hotel, and the boys were arranging to have a domino game; that he had gotten appellant to stay with his son at other times, and he had been sleeping with his son in the lat-

ter's room; that it was customary for the boys to play dominoes all night.

Appellant's father testified that about eleven o'clock on Sunday night he called appellant out of the hotel and talked to him some five or ten minutes. Barber testified that on Saturday night he and appellant had arranged to go hunting on Monday; that witness was a brakeman on the local train; that early Monday morning appellant met his train when witness informed him that he could not go hunting but would have to work that day; that appellant went with witness to the latter's house and from there back to the caboose where witness changed clothes; that about seven o'clock appellant left, going towards town.

Miss Alleene Russell, daughter of Mrs. Connie Russell, testified that appellant had not been at her mother's house the day or night before his arrest, until he came there with Sheriff Reeves and deputy Anderson; that he did not answer a telephone call from there early that morning; that it had been several days since appellant had been there; that at this time he was staying at the Main Hotel; the people who usually stayed at their house were witness, her mother, her brother and a Mr. Polk; the brother was not at home at this time, but had been at his grandfather's about a week. Witness knew nothing about the suitcases or how they came to be at the house.

Mrs. Connie Russell, appellant's sister, testified that it had been several days since appellant had been at her house; but that he was staying at the hotel with Buck Wilkinson; when he did stay at her home he slept with her son in the same room with her and her daughter; her son at this time was at his grandfather's; that Mr. Folk roomed there, and came in sometime Sunday night; that witness found two grips or suitcases in the back hall and reported it to the officers, but did not know how they came there; that appellant was not at her house on Monday until he was brought there by the officers; that he was not there early in the morning, and that he talked to no one over the telephone from there. She denied that early on Monday morning she told Chapman appellant was there asleep.

Appellant testified, admitting that he was sitting on the curb near the burglarized store just as testified to by Rogers and Stevens; that a short time before that he had been talking to Sugs who had gone to see a young lady, and that he was waiting around town until Sugs came back; that Sugs had told him that he had been invited to a game at Duffle's house, and it was upon this information from Sugs that he had informed Chapman as to said game; that he had helped Mr. Chapman on previous occasions and given him information of like character and that it was only upon Sugs' information that he reported the matter. He further testified that after Rogers left him as they walked up the street together, that he (appellant) walked on to the corner and talked to some boys in front of the drugstore for a while, and gives an account in detail of his movements until the time

he went to the Main Hotel; that while he, Harris, Sugs and Wilkinson were playing dominoes at the hotel, appellant's father came and called him out some twelve or fifteen steps away from the hotel porch and there had a conversation not lasting over twenty minutes, when he returned and resumed the game; that he remained at the hotel until about three or four o'clock in the morning when he and Buck Wilkinson went to the restaurant to get something to eat, and from there he went to the train to meet Barber; that after leaving Barber at the train appellant came back to town; that Anderson, the deputy sheriff, asked him to go with him after some witnesses, saying he would be back in a little while. Appellant denied that he went to his sister's, Mrs. Russell, at any time that morning. He says Anderson told him about the burglary, and that he told Anderson when they got back to town he would make some inquiry and if he could find out anything about it he would report the matter; that as they were leaving town he saw Chapman and told him practically the same thing; that Anderson found the witnesses had moved and instead of getting back to town within a short time as they had expected, it was somewhere in the neighborhood of three o'clock in the afternoon before they got back; that on the way back the sheriff met them and arrested appellant; that they went to Mrs. Russell's house, which was the first time he had been there all day, and had not been there the night before; that he had been staying with Buck Wilkinson at the hotel about three weeks prior to that time. Appellant denied having any knowledge that the stolen goods were at his sister's house or how they came there. He also denied that he was in the restaurant on the Sunday night in question with a rope in his hand as testified to by one of the witnesses for the State. He said he did sometimes help handle cattle and might at some other time have been in there with a rope; that he had nothing to do with the burglary and knew nothing about it until he was informed of it by Anderson on Monday morning when he started with him after the witnesses.

We have given the substance of all the evidence, both for the State and appellant. We are of opinion it falls short of meeting the requirements of the law before a conviction can be sustained. Appellant was never shown to be in possession of the stolen goods, or exercising over them control of any character, or asserting ownership therein. Lemon v. State, 89 Texas Crim. Rep., 361, 231 S. W. Rep., 388, and authorities therein cited. We regard the facts upon which this conviction rests to be even weaker than those recited in Moore's case. 91 Texas Crim Rep., 46. It appears from the testimony that a Mr. Polk had a room at Mrs. Russell's; that at some hour Sunday night he came to the house. He was not used as a witness and no effort was made to account for his movements during the night. We do not mean to intimate that he was connected in any way with the burglary, but mention this to point out the weakness of the State's case. There

seems to be no controversy about his presence in the house where the stolen goods were found, whereas it is a sharply drawn issue whether appellant was there until taken there by the officers under arrest. Every circumstances which the State could claim to be in anywise even suspicious is explained in a manner consistent with appellant's innocence. The facts to our mind are not consistent with each other, and the circumstances are not of a conclusive nature producing a reasonable certainty that appellant and no other person committed the burglary.

If this case should be tried again the statements of Chapman that Mrs. Russell told him over the 'phone that appellant was at her house and asleep should be excluded as hearsay. As we understand the record Chapman testified to this on direct examination. The presence of appellant at her house was controverted, and hearsay testimony on the issue was harmful.

The character of examination of the witness Anderson by the district attorney should not occur on another trial. He was a State's witness. He denied that appellant had made any criminative statement to him. The examination could not help but impress the jury that the witness was either withholding evidence beneficial to the State, or that the attorney believed this to be a fact. If the attorney was surprised at Anderson's evidence he cannot so claim on another trial. He was not giving damaging evidence against the State, but refusing to give testimony in its favor.

We do not think it was necessary to go into all the details of the alleged conversation between appellant and his father at the hotel, but it having occurred under peculiar circumstances and at an unusual hour, the subject of conversation should be revealed if thereby verity would be added in establishing that the conversation occurred.

The judgment must be reversed and the cause remanded for retrial.

*Reversed and remanded.*